## SYLVESTER HENRY v. SEYMOUR SHELDON.

### Attachment. Execution. Tools. Machinery.

A machine for shaving and splitting leather, operated either by hand, steam, or water, costing $250, and weighing from six hundred to nine hundred pounds, operated by turning a crank, and, when worked by hand, requiring two men to work it, and which had to be fastened to the floor by cleats when in operation, *held* not to be exempt from attachment and execution as a *tool* necessary for upholding life.

TROVER for " one iron and steel splitting machine." Plea, not guilty, with notice of special matter in defence, and trial by jury at the March Term, 1862, KELLOGG, J., presiding.

On trial, both parties claimed title to the property mentioned in the declaration under one V. R. Blush,—the plaintiff claiming under a sale thereof made by Blush to him for a valuable consideration, and the defendant claiming by a purchase of it at an auction sale of property sold on an execution in favor of one Cross against Blush. It was conceded that the machine, after the sale thereof by Blush to the plaintiff, remained in Blush's possession, in his tannery at Waterbury, as it did before the sale, up to the time when it was taken and sold by the officer as the property of Blush on the execution. The plaintiff claimed that the machine, when owned by Blush, was exempt from attachment as his property, and that, consequently, the sale of it by Blush to the plaintiff was valid as against the creditors of Blush without any change of possession.

The testimony introduced in relation to this splitting machine, tended to show that it was used for shaving or splitting leather, and was operated by hand, steam or water, and had been used by Blush in his tannery in each of these three ways ; that it cost $250 when new, and weighed from six to nine hundred pounds ; that it had two knives and two rollers, and was operated by turning a crank, and the leather passed between the knives and the rollers, and that when it was used or operated by hand, it took two men to work it ; that it was not fastened permanently to the building, but could be moved about wherever it was wanted ; that it was usual to fasten it to the floor by boards or cleats when in use to prevent its sliding, but not to fasten it

to the floor or building with bolts, or permanently; that such machines have taken the place of the old-fashioned way of shaving leather by hand, and have been in use for fifty years or more; and that Blush, at the time when he sold this machine to the plaintiff, was a tanner and currier, and followed no other trade or business.

The defendant admitted that he took the machine and held it before and at the time of the commencement of this suit, claiming title to it as aforesaid, and that he had refused to deliver it to the plaintiff, although the plaintiff had demanded the same of him while he thus held it.

On these facts in relation to the machine, the court ruled, and so instructed the jury, that it was not exempt by law from attachment as the property of Blush at the time when it was sold by him to the plaintiff. To this ruling and instruction the plaintiff excepted.

*L. Henry*, for the plaintiff.

*Dillingham & Durant*, for the defendant.

PECK, J. This is trover for an iron and steel splitting machine, as it is called in the exceptions. The plaintiff bought the property for a valuable consideration of one Blush, *a tanner and currier*, who carried on the business of his trade. The plaintiff took no possession of it, but left it in the possession of Blush, in his shop, where it remained until it was afterwards levied upon and sold by virtue of an execution against Blush, in favor of one Cross. The defendant's title is by purchase at the sheriff's sale on that execution. The only question in the case is whether the property was exempt from attachment; whether it is a kind of property which the statute exempts from attachment and execution. If it is, there was no necessity of any change of possession in order to put the property beyond the reach of attachment and levy by the creditors of Blush.

It appears that the machine was used for shaving or splitting leather, operated by hand, by steam, or by water power, and that Blush had used it in each of these ways. It cost $250, and

weighed from six to nine hundred pounds, had two knives and two rollers, and was operated by turning a crank, and when operated by hand, it required two men to work it. It was kept in its place by cleats, and was movable from place to place in the shop.

It also appears that such machines have taken the place of the old mode of shaving leather by hand, and have been in use fifty years or more.

There is no claim that this property comes within any of the articles of property exempt by law, unless it is a *tool*, within the meaning of the statute. In *Kilburn* v. *Demming*, 2 Vt. 404, the word *tool* in the statute was construed as applying to simple instruments, ordinarily used in manual labor, and not as embracing machinery, or an article that is usually denominated a machine. It was there decided that a spinning billy and jenny which cost about $100, and was operated by the owner by hand, and which the owner transported from place to place, and used wherever he could find employment, was not exempt from attachment. That case, so far as any decisions have been since made, has been followed, and must be decisive of this case, unless we put a different construction upon this clause of the statute. It is true the tendency of the more recent decisions upon some parts of this statute has been towards what may seem to be a more liberal interpretation in favor of the debtor. For instance, where the statute does not define the amount of property to be exempted, but leaves it to be measured by what may be deemed necessary, as in case of household furniture, courts might allow a greater quantity to the debtor than would have been exempt in the early history of the state ; but if so, it is not from applying a different rule of interpretation, but by interpreting the word *necessary*, in reference to the existing habits and customs of the people. But still, in order to be exempt under this clause of the statute, the article must be such as can be fairly denominated household furniture. So of other clauses of the statute, the property, in order to be exempt, must be of the *kind* or *class* mentioned in the statute, however convenient it may be for the debtor.

The article in question in this case, it is true, takes the place

of a tool that is exempt, but that is not sufficient, as the reason is true of almost all machinery, however expensive and complicated. If the introduction of machinery to supersede the use of tools has produced such change in the mode of labor as to render it expedient to protect from attachment articles of the class to which the one in question belongs, it is for the legislature, and not for the court, to provide the remedy.

The ruling of the county court was correct, and the judgment is affirmed.